IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 17-cv-01241-RBJ

TROY D. PAGGEN,

    Plaintiff,

v.

BANK OF AMERICA, N.A. and
PUBLIC TRUSTEE'S OFFICE OF ARAPAHOE COUNTY,
and any and all other parties who may have an interest in the subject property,

    Defendants.

## ORDER

This order addresses defendant's motion for summary judgment [ECF No. 38]. For the reasons given below, the motion is granted.

### I. BACKGROUND

This case involves a dispute over the accrual date of the six-year statute of limitations period for promissory notes per Colo. Rev. Stat. § 13-80-103.5(1)(a). In 2003, Plaintiff Troy Paggen obtained a loan for $520,000. ECF No. 38 at 2. The loan required him to make monthly payments beginning in 2003 and ending in 2033. *Id.* He secured the loan with a deed of trust on his Aurora, Colorado property. *Id.* Mr. Paggen's last loan payment was for the January 1, 2009 payment period. ECF No. 4 at 2. After missing his February 1, 2009 payment, Mr. Paggen's loan went into default status on February 2, 2009. *Id.*

In response to the missed payments, Defendant Bank of America, N.A. (BANA) (through BANA's former loan servicer, Countrywide Home Loans Servicing) sent Mr. Paggen a letter on

March 19, 2009, notifying Mr. Paggen of his default and providing him an opportunity to cure his default of $7,886 by April 18, 2009. ECF No. 38-2 at 26, Ex. 3. Mr. Paggen did not cure. ECF No. 4 at 3. BANA then initiated foreclosure by delivering a notice of election and demand for sale (NED) to the Arapahoe County public trustee on June 30, 2009; the county recorded the NED on July 9, 2009. *Id.* at 29, Ex. 4. The public trustee set an initial sale date for November 4, 2009. ECF No. 39 at 7, Ex. 2. BANA then obtained an order authorizing sale of the Aurora property on August 12, 2009. ECF No. 38-2 at 31, Ex. 5. However, Mr. Paggen applied for a short sale with BANA in 2009 and continued to request short sale approval through November 2010. ECF No. 38-1 at ¶ 11, Ex. A. This prevented BANA from proceeding with a foreclosure sale through November 2010. *Id.* In addition to the request for a short sale, a federally mandated foreclosure hold (based on the Making Home Affordable program) also prevented BANA from proceeding with foreclosure in 2009. *Id.* BANA withdrew the 2009 NED on July 28, 2011. ECF No. 38-3 at 4, Ex. 8.

BANA initiated a second NED on October 14, 2011, which Arapahoe County recorded on October 19, 2011. *Id.* at 6, Ex. 9. Like before, the public trustee set an initial sale date, this time for February 15, 2012. ECF No. 39 at 11, Ex. 4. On February 4, 2012, Mr. Paggen filed for Chapter 7 bankruptcy. ECF No. 29-4 at 3, Ex. F. In his Chapter 7 Individual Debtor's Statement of Intention form—a statement made under penalty of perjury—Mr. Paggen indicated that he would surrender his Aurora property. ECF No. 29-4 at 48-50, Ex. G. The U.S. Bankruptcy Court granted a discharge on May 4, 2012. *Id.* at 52, Ex. H. BANA placed the foreclosure on hold on June 11, 2012, due to a settlement with the Department of Justice. It then removed the hold on December 16, 2013. ECF No. 38-1 at ¶ 17, Ex. A. BANA withdrew the 2011 NED on July 5, 2012. ECF No. 38-3 at 20, Ex. 13.

In June 2014, BANA's new loan servicer (Ocwen Loan Serving, LLC) notified Mr. Paggen that he had until July 30, 2014, to bring the account current. ECF No. 38-3 at 22–23, Ex. 14. At the time, Mr. Paggen owed $218,138. *Id.* The letter stated that "[f]ailure to bring your account current may result in our election to exercise our right to foreclose on your property. Upon acceleration, your total obligation will be immediately due . . . ." *Id.* In 2016, Mr. Paggen's loan transferred again to a third loan servicer (now Shellpoint Mortgage Serving). *Id.* at 30, Ex. 16. On February 15, 2016, Shellpoint sent a similar letter as Ocwen. It stated that Mr. Paggen owed $287,051, and that if he failed to cure the default by the end of March, "Shellpoint will accelerate the maturity date of the Note and declare all outstanding amounts under the Note immediately due and payable." *Id.* When Mr. Paggen did not cure, BANA initiated its third NED on January 9, 2017. *Id.* at 34, Ex. 17. At the present time, the loan remains in default. ECF No. 38 at 4.

Plaintiff Troy Paggen initiated this action on April 24, 2017, in the District Court of Arapahoe County, Colorado. ECF No. 4 at 1. In his complaint, Mr. Paggen sought a Determination of Interests Pursuant to C.R.C.P. 105 and Declaratory Relief. Specifically, he asserted that the six-year statute of limitations began to run on February 2, 2009, the day he first defaulted on his loan, thus expiring on February 3, 2015. ECF No. 4 at 4. Mr. Paggen also sought a determination that the deed of trust was extinguished and unenforceable, and the underlying debt evidenced by the promissory note held by BANA was time-barred and uncollectable. *Id.* at 5. BANA responded with a motion for summary judgment, arguing that it timely initiated foreclosure because the six-year statute of limitations begins to run on acceleration as opposed to default. ECF No. 38 at 1. Then, BANA argued it effectively

abandoned its 2009 and 2011 foreclosures by withdrawing those actions, thus restoring the loan's installment status and its original 2033 maturity date. *Id.* at 2.

## II. STANDARD OF REVIEW

BANA moves for judgment on the pleadings and summary judgment. The Court will use the summary judgment standard of review in ruling on this matter.

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the nonmoving party. *Concrete Works of Colorado, Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

## III. ANALYSIS

As a preliminary matter, the Court notes that federal question jurisdiction is absent in this case. Therefore, the Court must have diversity of citizenship jurisdiction over the parties. The Court has diversity of citizenship jurisdiction if (1) the matter in controversy exceeds $75,000, exclusive of interest and costs, and (2) the dispute is between citizens of different states. 28 U.S.C. § 1332(a)(1). In this case, the amount in controversy exceeds $75,000 because the deed

of trust secures a loan in the original principal amount of $520,000 and the current unpaid principal is $516,737.  ECF No. 1 at 3; ECF No. 38-1 at ¶ 23.  Second, there is complete diversity between the parties because Mr. Paggen is a Colorado citizen and BANA is a North Carolina citizen.  ECF No. 1 at 2.  Because the parties satisfy the amount in controversy requirement and complete diversity exists, the Court finds that diversity of citizenship jurisdiction exists in this lawsuit and subject matter jurisdiction is proper.  The Court will apply Colorado law.  *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 79–80 (1938).

In its two motions, BANA makes four primary arguments: First, that loan acceleration, not default, triggers the six-year statute of limitations.  Second, that Mr. Paggen cannot demonstrate acceleration.  Third, that even if BANA did accelerate, the NED withdrawals restored the loan to pre-acceleration status.  And fourth, that equity should prevent Mr. Paggen from challenging foreclosure.[1]  ECF Nos. 29 and 38.

### A. **Acceleration, not default, triggers the six-year statute of limitations.**

"Whether a statute of limitations bars a particular claim is a question of fact."  *Trigg v. State Farm Mut. Auto. Ins.*, 129 P.3d 1099, 1101 (Colo. App. 2005).  "However, if undisputed facts demonstrate that the plaintiff had the requisite information as of a particular date, then the issue of whether the statute of limitations bars a particular claim may be decided as a matter of law."  *Id.*

In this case, the parties agree that Colo. Rev. Stat. § 13-80-103.5(1)(a), which provides for a six-year statute of limitations period for the enforcement of any instrument securing the payment of a debt, governs in this case.  ECF Nos. 38 and 40.  They also agree on the facts.  However, the parties disagree as to the legal date of accrual for the statute of limitations.  BANA

---

[1] The Court declines to consider the fifteen-year statute of limitations argument BANA made for the first time in ECF No. 43 (Reply Supporting Motion for Summary Judgment) because Mr. Paggen was not given an opportunity to respond to this argument.

argues the statute of limitations begins when the lender accelerates the loan. For support, BANA cites *Castle Rock Bank v. Team Transit, LLC*, which grappled with the issue of when debt that is to be repaid in installments "becomes due." 292 P.3d 1077, 1082 (Colo. App. 2012) (quoting Colo. Rev. Stat. § 13-30-108(4)). The appellate court ruled that

> if an obligation that is to be repaid in installments is accelerated, either automatically by the terms in the parties' agreement or by the election of the creditor pursuant to an optional acceleration clause, the entire remaining balance of the loan becomes due immediately, and the statute of limitations is triggered for all installments that had not previously become due.

*Id.* (citing *Hassler v. Account Brokers of Larimer Cty, Inc.*, 274 P.3d 547, 553 (Colo. 2012)).

Next, just this year, a judge in this district decided a factually similar case and found *Castle Rock Bank* to control. Judge Moore adopted the recommendation of Magistrate Judge Wang. *Davis v. Wells Fargo Bank, N.A.*, No. 17-CV-00714, slip. op. at 6 (D. Colo. Mar. 9, 2018). In *Davis*, Mr. Davis initiated suit to determine his rights and interests arising out of a pending foreclosure. *Davis v. Wells Fargo Bank, N.A.*, No. 17–CV–00714–MSK–NYW, 2017 WL 4516830, at *2 (D. Colo. Oct. 10, 2017). Wells Fargo was the holder of the promissory note; it secured the note through a deed of trust on Mr. Davis's Durango property. *Id.* Mr. Davis defaulted on February 2, 2008, and Wells Fargo elected to accelerate the note by filing a NED in June 2008. Wells Fargo withdrew this NED and subsequently filed three more. *Id.* The fourth foreclosure, filed in April 2014, was at issue in the lawsuit. Mr. Davis argued that the six-year statute of limitations began to run on February 2, 2008, the day of default, which would make the April 2014 NED two months late. *Id.* Judge Wang disagreed. Considering *Castle Rock Bank* and *Hassler*, the court determined that Wells Fargo's fourth election to accelerate was not untimely because the accrual date ran from the June 2008 NED as opposed to the date of default. *Id.* at *4–5.

In contrast, Mr. Paggen argues the statute of limitations begins when the borrower first defaults. He relies on the Colorado Supreme Court case of *Lovell v. Goss*, 101 P. 72 (Colo. 1909), which stands for the proposition that "the statute of limitations runs from the date of default upon which the election to accelerate is based, not from the date of the election itself." *Application of Church*, 833 P.2d 813, 815 (Colo. App. 1992) (citing *Lovell*, 101 P. at 72). Under this "default accrual standard," the six-year statute of limitations in this case would begin running on February 2, 2009, the day Mr. Paggen first defaulted on his loan. The issue with *Lovell* is that it appears to be ripe for reconsideration by the Colorado Supreme Court. In a footnote in the 2012 case *Hassler*, the Supreme Court acknowledged that under the majority rule, a cause of action begins to accrue the day the creditors elect to accelerate. *Hassler*, 271 P.3d at 557 n.11. It also acknowledged that *Lovell* predated Colorado's adoption of the Uniform Commercial Code (UCC), which states that the six years begins running upon acceleration. *Id.* Because the statute of limitations under the *Hassler* facts would have expired under either the default accrual standard or the acceleration accrual standard, the court declined to address whether *Lovell* was still good law. *Hassler*, 271 P.3d at 557 n.11.

The overwhelming weight of case law supports the proposition that the statute of limitations begins running at acceleration as opposed to default. As BANA argued, the *Castle Rock Bank* court ruled that when a loan obligation is accelerated, the statute of limitations is triggered upon acceleration for all installments that had not previously become due. *Castle Rock Bank*, 292 P.3d at 1082. In this case, the Court rules that the six-year statute of limitations was triggered the day BANA elected to accelerate the loan as opposed to the date of default. Upon

BANA's election to accelerate, the entirety of the remaining balance became due and the cause of action to collect on the loan began to accrue.[2]

Because the Court finds that case law and the language of the note supports the holding that accrual begins to run upon acceleration, the next step in the analysis is to determine whether BANA accelerated the note, and, if so, when BANA accelerated the note.

### B. Date of Acceleration.

BANA argues that its three NEDs did not accelerate the loan. Rather, BANA argues it merely identified BANA's deed of trust, the original loan amount, and the amount of outstanding principal. ECF No. 29 at 5. Mr. Paggen takes the position that BANA's first NED, recorded on July 9, 2009, accelerated the loan. Therefore, even if the Court decides accrual runs from acceleration, the six-year limitation period would expire on July 10, 2015.

"Acceleration clauses premised on default in payment are enforceable" in Colorado. *Bauer Dev. Co. v. Nu-West, Inc.*, 757 P.2d 1149, 1150 (Colo. App. 1988). When a creditor wishes to take advantage of an optional acceleration provision, the creditor "must perform some clear, unequivocal affirmative act evidencing his intention to take advantage of the accelerating provision." *Id.* Letters sent by the creditor to the debtor threatening foreclosure if the default is not cured are not enough to evidence a clear, unequivocal indication that the creditor is exercising its option to accelerate. *Id.* In contrast, Colorado courts have ruled that the "commencement of a foreclosure action was sufficient to accelerate the obligation secured by the

---

[2] This ruling is in accord with the language of Mr. Paggen's note. Paragraph 7(C) of Mr. Paggen's note states,
> If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me . . . .

ECF No. 38-2 at 2, Ex. 1.

deed of trust." *Kirk v. Kitchens*, 49 P.3d 1189, 1192 (Colo. App. 2002) (citing *Hendron v. Bolander*, 74 P.2d 706, 708 (1937)).

The first task for the Court is to review the terms of the note for an optional acceleration provision. Paragraph 7(c) of the note allows the note holder to send written notice requiring Mr. Paggen to "pay immediately the full amount of Principal that has not been paid and all the interest that [he] owe[s] on that amount." BANA must give Mr. Paggen thirty days to make the payment after the notice is mailed. Paragraph 22 of the deed of trust requires prior notice specifying the default, detailing the action required to cure the default, a date the default must be cured, and that failure to cure is grounds for acceleration. The Court finds that the terms of the note and deed of trust in this case allow for acceleration after formal notice.

The second task is whether the letters sent prior to the NEDs qualify as acceleration. On March 19, 2009, BANA's loan servicer sent a "notice of intent to accelerate" letter to Mr. Paggen. In this letter, BANA does not demand the full balance or inform Mr. Paggen that it is exercising its right to accelerate. Rather, the letter identified the total amount past due and stated, "If the default is not cured on or before April 18, 2009, the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable, and foreclosure proceedings will be initiated at that time." ECF No. 38 at 6–7. The Court finds that the 2009 letter (along with the 2014 and 2016 letters) did not accelerate the loan. *Bauer* makes clear that a letter sent by the obligee which merely threatens foreclosure is not a "clear, unequivocal affirmative act" of acceleration. *Bauer*, 757 P.2d at 1150.

The final task in determining the date of accrual is to review the NEDs. BANA's argument is that its 2009 NED did not unequivocally demonstrate an intent to accelerate. To support its assertion, BANA points to a single state district court case. *Bank of New York Mellon*

*v. Peterson*, No. 15-CV-10, at 6 (Archuleta Cty. Dist. Ct. Oct. 7, 2016). In *Peterson*, the obligee filed a NED in October 2008, and the public trustee initiated foreclosure proceedings that same year. *Id.* at 3. The obligee withdrew the foreclosure proceeding. *Id.* The judge found that the 2008 foreclosure action "did not serve to accelerate the loan." *Id.* at 6.

This ruling seems at odds with a Colorado Supreme Court's decision from 2009. In *Land Title Ins. Corp. v. Ameriquest Mortg. Co.*, the court found that Land Title, the holder of the deed of trust, initiated foreclosure of the deed of trust by filing a NED. 207 P.3d 141, 143 (Colo. 2009). The court stated, "When recorded by the public trustee, a notice of election and demand for sale commences the public trustee foreclosure process." *Id.* at 143 n.6. And, as discussed, *Kirk* held that commencement of foreclosure accelerates a debt. *Kirk*, 49 P.3d at 1192.

In the present case, BANA initiated foreclosure three times by delivering three NEDs to the Arapahoe County public trustee, all of which were recorded. The Court finds that the July 9, 2009 NED accelerated the debt thus triggering the six-year statute of limitations. In his pleadings, Mr. Paggen argues that BANA's first disclosure accelerated the debt, and the Court agrees. Plus, the Colorado Supreme Court has said that "whether acceleration is unequivocal should be viewed from the perspective of the debtor." *Hassler*, 271 P.3d at 555. Because the Court finds the July 9, 2009 NED (as well as the two subsequent NEDs) triggered the statute of limitations, the court must analyze the effect of withdrawing a NED.

**C. Deceleration of the Loan.**

BANA argues that its withdrawal of the 2009 and 2011 NEDs show intentional abandonment of prior acceleration, thus restoring the loan to pre-foreclosure status. Mr. Paggen responds by arguing that not a single Colorado case mentions "deceleration" of an accelerated

10

loan, and he further argues that BANA's position would render the statute of limitations meaningless.

BANA's deceleration argument is based on the principle of waiver. "Waiver is the intentional relinquishment of a known right or privilege." *Dep't of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984). A waiver may be explicit, such as when a party abandons a right or privilege in writing, or it may be implicit. *Id.* Regarding the right to decelerate, courts have recognized that lenders may waive the right to accelerate a note after it has already exercised its option to accelerate. *Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 105 (5th Cir. 2015) (citing *Denbina v. City of Hurst*, 516 S.W.2d 460, 463 (Tex. App. 1974); *See also In re Carleno*, No. 16-21791-KHT, at 4 (Bankr. D. Colo. Jan. 22, 2018) (explaining that the lender had the right to decelerate the previously accelerated debt) (citing 11 Am. Jur. 2d *Bills & Notes* § 170) (footnotes omitted) ("The exercise of an option to accelerate is not irrevocable, and the holder of a note who has exercised the option of considering the whole amount due may subsequently waive this right and permit the obligation to continue in force under its original terms for all purposes.").

In *Boren*, the lender sent a notice of default letter to the debtors notifying the homeowners that they were in default. *Boren*, 807 F.3d at 102. When the homeowners failed to cure, the bank elected to accelerate the debt on the home loan. *Id.* Subsequently, the bank sent additional notices of default and additional notices of acceleration. *Id.* The debtors argued the bank was time-barred based on their original acceleration. *Id.* The Fifth Circuit disagreed. *Id.* at 106. Although the court found that the initial acceleration triggered the statute of limitations, it ruled that the abandonment of the acceleration restored the loan to its original condition, thereby "restoring the note's original maturity date" for purposes of accrual. *Id.* at 104 (quoting *Khan v. GBAK Props.*, 371 S.W.3d 347, 353 (Tex. App. 2012)). The court relied on the language of the

subsequent notices of default letters, which notified the borrowers that they "could bring their loan current" by paying their overdue payments. *Id.* at 104. The letter further threatened acceleration if payment was not timely made. *Id.* Because the "notice unequivocally manifested an intent to abandon the previous acceleration and provided the [borrowers] with an opportunity to avoid foreclosure if they cured," the court ruled that the statute of limitations ceased to run upon receipt of the letter and did not begin to accrue until the bank elected to accelerate again. *Id.* at 106.

In *Koyle v. Sand Canyon Corp.*, the Tenth Circuit affirmed the district court's decision to allow unilateral deceleration. 683 F. App'x 715, 724 (10th Cir. 2017). The lender filed a notice of default and election to sell (notice of default) on October 16, 2003. *Id.* at 723. Subsequently, on September 27, 2011, the lender canceled the notice of default. *Id.* The Tenth Circuit held that nothing in either the note or deed of trust precluded the lender from decelerating the loan. *Id.* at 724. Therefore, when the lender reaccelerated the loan on December 19, 2014, a new statute of limitations period began running upon reacceleration. *Id.*

Another district court in the Tenth Circuit recently considered facts similar to the present case. In *Lewis v. Caliber Home Loans, Inc.*, the lender recorded a notice of default and accelerated the loan on April 12, 2010. No. 2:16-CV-01252, 2018 WL 485967, at *1 (D. Utah Jan. 18, 2018). On May 1, 2014, the lender withdrew the notice of default. *Id.* The very same day, the lender reaccelerated the debt. *Id.* The borrower sought a declaratory judgment for quiet title, arguing that the case is time-barred. *Id.* The borrower argued the six-year statute of limitations began to run from the date of default, and in the alternative, that it began to run when the bank first accelerated in 2010. *Id.* at *2. The court ruled that the date of accrual would begin when the note is due in full or when the lender accelerated the loan. *Id.* Relying on *Koyle*, the

court ruled that the lender was within its right to decelerate the debt. *Id.* at *3. Thus, a new statute of limitations began to run upon the second notice of default being recorded. *Id.*

In this case, the Court has already ruled that the BANA first accelerated on July 9, 2009, when the county recorded its 2009 NED. The Court now must decide whether BANA properly decelerated the loan. The Court finds that it did.

In so ruling, as a preliminary matter, the Court must look at the language of the note and deed of trust. Mr. Paggen has not pointed to any language in the two documents which "preclude[s] the lender from decelerating the loan," and the Court does not find any either. *Koyle*, 683 F. App'x at 724.

Next, because the contractual obligations of the parties do not prevent deceleration, the Court finds that through its actions, BANA abandoned its previous acceleration of the debt, if not through its notice of default letters, then for sure by its two formal NED withdrawals. First, the Court agrees with BANA that the notice of default letters sent by BANA's loan servicers dated June 23, 2014, and February 2, 2016, indicated BANA's "unequivocal[] manifestation of intent" to abandon its previous acceleration. *Boren*, 807 F.3d at 106. The first letter stated that Mr. Paggen was in default and owed $218,138. The letter further stated that failure to bring the account current may result in acceleration of the loan and foreclosure proceedings. The second letter notified Mr. Paggen that if he paid the amount now due—which was $280,251—by the end of March 2016, Mr. Paggen may continue with the contract as originally written. The letter warned that failure to cure will result in acceleration of the note. Like the notice of default letters in *Boren*, BANA's two letters suggest that BANA was no longer seeking to collect the full balance of the loan because both letters allowed Mr. Paggen to cure his default and continue as if acceleration never occurred. *See Boren*, 807 F.3d at 105.

13

Second, even if the Court did not find that these letters evidenced an unequivocal manifestation of intent to abandon the acceleration, the Court finds that the two "Withdrawal of Notice of Election and Demand for Sale by Public Trustee," recorded August 5, 2011, and July 9, 2012, provided proper notice to Mr. Paggen that BANA intended to abandon its previous accelerations.

Therefore, the court finds that a new statute of limitations period began to run upon the recording of the third reacceleration, which in this case is January 13, 2017, well within the six-year statute of limitations.

The case is decided at this point. However, in the event of error, the Court will decide the equity claims as well.

### D. Equitable Remedy.

BANA makes two arguments based in equity. First, it argues that Mr. Paggen should be barred from challenging the foreclosure proceedings because he declared his intention to surrender his property under oath to the bankruptcy court. Second, in the event the Court rules that the statute of limitations expired by rejecting its primary arguments, BANA argues equitable tolling should be applied to the facts of the case. Mr. Paggen counters that his actions did not prevent BANA from foreclosing on his property within the six-year statute of limitations period. He further contends that some additional act, such as fraudulently concealing facts or failing to disclose required information, is required for equitable tolling.

BANA's first argument rests on *In re Failla*, 838 F.3d 1170, 1174 (11th Cir. 2016). The issue in *Failla* was whether debtors who agree to surrender their home in bankruptcy proceedings may oppose a foreclosure action in state court. *Id.* at 1173. The circuit court said they could not. *Id.* The facts of the case were similar to this case. The debtors filed a statement

of intention to surrender their house but later contested a foreclosure action. *Id.* at 1177. The court ruled that the term "surrender" means to give up a right or claim. *Id.* Therefore, the homeowners were no longer allowed to contest the foreclosure action. *Id.*

Mr. Paggen argues that the facts of *Failla* are distinguishable because he did not continue to litigate with BANA. The Court finds this argument unpersuasive. Mr. Paggen filed suit against BANA on April 24, 2017, seeking the following: a determination that the deed of trust is unenforceable, a declaration that the underlying debt on the promissory note is time-barred and uncollectable, and *preliminary injunctive relief preventing the foreclosure sale of his home*. ECF No. 4 at 5. On its face, the Court is convinced that Mr. Paggen did contest the foreclosure action and therefore is barred from challenging the foreclosure action as untimely.

Concerning BANA's second argument, Colorado courts limit equitable tolling to situations where the defendant wrongfully hindered the plaintiff's ability to litigate the claim or where truly extraordinary circumstances prevented the plaintiff from timely filing the claim despite diligent efforts. *Deutsche Bank Tr. Co. Americas v. Samora*, 321 P.3d 590, 596 (Colo. App. 2013). Courts will apply the equitable doctrine when a rigid application of the statute of limitations would produce an unjust result. *Id.* at 597. The Colorado Supreme Court has recognized equitable tolling "where flexibility is required to accomplish the goals of justice." *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1096 (Colo. 1996). The rationale behind the doctrine is that it is unfair to penalize parties for circumstances beyond their control. *Id.* at 1097.

In this case, Mr. Paggen argues that the statute of limitations began to accrue on the date of default—February 2, 2009. Thus, if the Court accepted his position, the six-year statute of limitations would expire on February 3, 2015, approximately eighteen months before Arapahoe

15

County recorded BANA's third NED on January 9, 2017. However, certain actions prevented BANA from foreclosing. First, the Chapter 7 bankruptcy proceedings prevented BANA from foreclosing for three months. Second, Mr. Paggen applied for a short sale in September 2009 and continued to request short sale approval for another year. During that time, BANA could not proceed with foreclosure. Finally, BANA placed its second foreclosure on hold due to settlement discussions with the Department of Justice. This hold lasted June 11, 2012, until December 16, 2013.

The Court finds that these three actions were beyond the control of BANA. It would be unfair to penalize BANA for refusing to rush to foreclosure despite federal loss mitigation directives and settlement obligations. Although Mr. Paggen's actions were not fraudulent nor did he induce BANA to allow the statute of limitations to run, the Court finds that equitable tolling is "required to accomplish the goals of justice." *Dean Witter Reynolds*, 911 P.2d at 1096. Therefore, Mr. Paggen is barred from challenging the foreclosure action as untimely.

## ORDER

(1) Defendant BANA's motion for summary judgment, ECF No. 38, is GRANTED. Defendant BANA's motion for judgment on the pleadings, ECF No. 29, is GRANTED. This civil action and all claims within are dismissed with prejudice.

(2) Defendant BANA's request for judicial notice, ECF No. 39, is GRANTED.

DATED this day 27th day of August, 2018.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge